Nelson County Court *vs.* Washington County Court.

BRIDGE CASE.

Case 20.                        APPEAL FROM NELSON COUNTY COURT.

1. The circuit court has not the right to require, by peremptory mandamus, the county court of one county, between which and another county, it is proper and necessary to construct a bridge, to make a levy to defray the expense thereof, until there has been action by the county courts through the appropriate commis sioners to decide upon the location, cost, &c.

2. It is the duty of one county court, under the act of 1797, section 8, when another county court conceives a bridge necessary on the dividing line between the two counties, and appoints commissioners to confer, &c., also to appoint commissioners to act in conjunction with those first appointed on the subject of the bridge. If the county court refuse to unite in the object and appoint commissioners, the circuit court may compel action by mandamus.

3. The county courts, between which it is proper for them to unite in the construction of a bridge across a stream which divides two counties, are neither of them required to make any levy upon the citizens to construct the bridge until the commissioners, con templated by the statute, have agreed upon the "dimensions, quality, structure, materials, and terms of the contract under which it is to be built."

4. The circuit court has no power, under the act of 1797, 8th section, to compel one county court to pay by tax on its citizens for the construction of any bridge across a stream dividing two counties, when the latter county has not united in the contract to build such bridge.

5. The criterion pointed out by the 7th section of the act of 1797, for defraying the costs of bridges over streams dividing two coun ties, should be pursued.

July 1.            Chief Justice HISE delivered the opinion of the court.

Case stated.     By the 7th section of the act concerning public roads, passed in February, 1797, it is provided: "Where a bridge or causeway shall be necessary from one county to another, the court of each county shall join in the agreement for building and repairing the same, and the charge shall be defrayed by both counties, in proportion to the public tax or assessment paid by each." The 8th section of said act seems to prescribe particularly the mode by which one county may proceed against another to procure its co-ope ration in building bridges or causeways between them, and provides as follows: "When the justices of one county shall *judge* a bridge or causeway over any place between them and another county to be *neces*

*sary*, they shall notify the same to the justices of such other county, and require them to appoint three persons to meet at the said place on a certain day to be named by the court, requiring the same to confer with three others, to be appointed by the said requiring court, and *agree* on the manner and condition of executing the same, which six persons, or so many of them as meet, being not fewer than three, *shall have power* to agree on the manner and conditions of doing the said work; and if the court, so required, shall fail to appoint persons to act on their behalf, or to do on their part what should be done towards executing and paying for the work, the justices of the said court, which made the requisition, shall apply to the district court for a writ of *mandamus*, to be directed to the justices of the other court, commanding them to do on their part what they ought to have done, and have failed to do, or to signify to them, cause to the contrary thereof; upon the return of which writ, the district court, if they shall be of the opinion that the work is unnecessary, or that other sufficient cause is returned, shall quash the writ, or if they think otherwise, shall cause such further proceedings to be had, as are usual in other cases of mandamus, issuing from the said court.

Under this law, the county court of Washington county, at their October term in the year 1851, in the form of orders entered upon the records of the court, adopted the requisite proceedings to enforce the co-operation of the county court of Nelson county in the design of building a bridge at a point over Chaplin river where it formed the boundary line of both counties, just below Beauchamp's old mill, to connect thereby the Maxville and Bloomfield road, and the county judge and justices of the Washington county court, at the term aforesaid, adjudged a bridge, at the place indicated, to be necessary; they appointed three commissioners by name, to meet at the place on a day fixed, three other commissioners to be appointed by the Nelson county court, to confer together and agree

NELSON COUNTY
COURT
*vs.*
WASHINGTON
COUNTY COURT.

upon the subject of the manner and conditions of building the bridge; they ordered a levy of $2,500 to be made upon the tithables of Washington county, to be appropriated towards the expense of the construction of the bridge, to be collected by equal installments in the years 1852–3 and 4; they ordered that their action and proceedings, as aforesaid, should be notified to the presiding judge and justices of the Nelson county court, and that they should be required to appoint three persons on their behalf to meet and confer with the commissioners already appointed by the Washington county court, that they might agree together touching the construction of said bridge, &c.

After due notice of said proceedings, and of the said requisition of the Washington county court, had been given to the presiding judge and justices of the Nelson county court, "the Washington county court, by their attorney, moved the Nelson county court, (at the December term thereof in the year 1851,) to appoint three persons, or commissioners, to unite and confer with those persons who had previously been appointed by the Washington county court, to meet together at the place for building the bridge, to confer, &c., upon that subject; in support of this motion, the attorney for the Washington county court, produced in evidence the record of all the proceedings taken by that court, and made other proof of the necessity for a bridge at the place designated over Chaplin river." The Nelson county court overruled this motion, and refused to appoint three commissioners, as demanded.

Afterwards, at the March term of the Nelson circuit court for the year 1852, upon the motion of the attorney for the Washington county court, supported by record evidence of the action and proceedings of the county courts of both counties, as recited above, a rule was awarded against the presiding judge and justices of the Nelson county court, to appear on the 1st day of the next term of the court to show cause, if any they had, why they did not, upon the applica-

tion of the Washington county court, appoint three commissioners, or persons, for the purposes, &c., as required, &c. by said county court; and further, "to show cause why they should not be compelled to lay a levy to build said bridge, and why they should not be compelled to appoint said commissioners to act with the commissioners of Washington county, for building said bridge, and taking the steps required of them by law to build said bridge." This rule having been served upon them, the presiding judge and jus tices of the Nelson county court, by their attorney, appeared to the rule, and filed a response thereto, in which they set forth various reasons and grounds up on which they rely, in support of their refusal to ap point commissioners, as demanded by Washington county, and as furnishing sufficient cause of justifica tion for their refusal to concur with Washington coun ty, as to the necessity of building said bridge.

Upon this rule and response, after having heard the evidence produced by both counties, consisting of the record of the proceedings of both county courts upon the subject, and other evidence upon the question of the necessity for the erection of such bridge over Chaplin river, just below Beauchamp's mill, and upon the question as to whether it would be just and expe dient for Nelson county to be compelled to contribute towards the expense of its construction, the circuit judge rendered a judgment imperitively directing and commanding the county judge and justices of the Nelson county court, and the Nelson county court as composed of said judge and justices, "to levy upon the tithables of Nelson county the sum of $2,500, a third of this sum to be collected by the proper officers in each of the years 1853-4 and 5, and to appropri ate and pay the money to the building of the contem plated bridge over Chaplin river, just below Beau champ's mill, and awarding a peremptory mandamus to compel obedience to the judgment as rendered." From this judgment the county of Nelson has ap pealed to this court, and demands a reversal thereof

NELSON COUNTY COURT vs. WASHINGTON COUNTY COURT.

1. The circuit court has not the right to require by peremptory mandamus the county court of one county between which and another county it is proper and necessary to construct a bridge, to make a levy to defray the expense thereof until there has been action by the county courts, through the appropriate commissioners, to decide upon the location, costs, &c.

for various alleged errors in substance and in the form of the proceedings, all of which it is unnecessary to notice.

The circuit judge in giving this judgment exceeded his authority, by prematurely ordering the county court of Nelson to levy upon her inhabitants $2,500, to be paid towards building the said bridge over Chaplin river, upon a rule, which at the then stage of the proceedings, should only have required the Nelson county court to justify its course in refusing, upon the motion and demand of the attorney of the Washington county court, to appoint three commissioners at their December term, 1851. When this motion was made and overruled in the Nelson county court, there had been no action of a joint commission upon the subject of building the bridge, or agreeing upon the "*manner and conditions of doing the said work,*" and consequently the state of case did not exist, and no foundation had been laid upon which to base a motion to tax the inhabitants in any form to raise the money to build a bridge until a joint commission should be appointed. Nelson county could not be required by Washington county to make a levy and raise money to any amount, hence, she was required only to appoint three commissioners to confer, &c., which she refused to do.

2. It is the duty of one county court, under the act of 1797, section 8, when another county court conceives a bridge necessary on the dividing line between the two counties, and appoints commissioners to confer, &c., also to appoint commissioners to act in conjunction with

Upon the trial of the rule in the circuit court, what was the charge against the recusant county of Nelson? What legal duty had she failed to perform which she, under the 8th section of the act of 1797, ought to have performed, or was bound to perform? Nothing more than deny the application of the Washington county court to appoint three commissioners. Upon the trial of the rule, therefore, the only legitimate issue formed, and enquiry to be made was, had Washington county the right to demand of Nelson county the appointment of the three commissioners, and was or not Nelson county bound to make the appointment? If so, then the circuit court, upon so determining the issue presented, should have only award-

ed a mandamus to compel an obedience to his judgment, that the commissioners should be appointed as required by law. Say, that upon the motion as made, the Nelson county court ought to have appointed three commissioners, but failed to do it, then a peremptory mandamus, after overruling the excuse offered in response to the rule to show cause, &c., should have been awarded, not to compel Nelson county to do what she had not been asked to do, and what could not, at the time, have been lawfully required of her, to-wit: to tax her tithables to raise money to build a bridge before a joint commission had been appointed, but to command and compel the Nelson county court to do (to use the very words of the statute,) "what, on their part, they ought to have done, and failed to do," to-wit: to appoint three persons to confer with three others appointed by the Washington county court, and to exercise, as a joint commission, their power to agree on the manner and conditions of building the bridge; for as the law is understood by this court, until such joint commission is constituted to act in obedience to the requisitions of the statute, neither of the counties are bound, nor can either be compelled to tax their citizens in any way to raise the money to build the bridge.

By the words "the manner and conditions of doing the said work," is meant the plan, dimensions, and qualities of the structure, the materials of which it is to be built, and the terms of the contract under which it is to be constructed, all of which should be fixed and ascertained before the county should be compelled to raise, by taxation, the ways and means to pay the cost of construction.

It is no sufficient answer to this view of the subject, to say that the commissioners who had been appointed by the Washington county court, at its previous October term, had, on the 19th of June, 1852, after the rule had been issued and served, but before the judgment was rendered upon it, made an *ex parte* contract with Carothers & Applegate, to build the

those first appointed on the subject of the bridge. If the county court refuse to unite in the object and appoint commissioners, the circuit court may compel action by mandamus.

3. The county courts between which it is proper for them to unite in the construction of a bridge across a stream which divides two counties, are neither of them required to make any levy upon the citizens to construct the bridge until the commissioners contemplated by the statute have agreed upon the "dimensions, quality, structure, materials, and terms of the contract under which it is to be built."

4. The circuit court has no power under the act of 1797, 8th section, to com-

NELSON COUNTY
COURT
vs.
WASHINGTON
COUNTY COURT.

pel one county court to pay, by tax on its citizens, for the construction of any bridge across a stream dividing two counties, where the latter county has not united in the contract to build such bridge.

bridge at the agreed price of $5,600, to be paid in three installments on the first days of the month of October in 1852–3 and 4, because this contract being altogether *ex parte*, and made without a conference with, or the concurrence of the commissioners to be appointed by Nelson county, she was not bound, and ought not to have been required to pay any amount whatever upon such contract, until she had been compelled to appoint three commissioners; and because, further, the Washington county court, or their commissioners, with or without an order of said court, had no power under the law to make an *ex parte* agreement as to the manner and conditions of building the bridge, and conclude a contract in pursuance thereof, so as to be binding on Nelson county.

After a rule had been awarded and served, upon which, in no event, in the then existing stage of the proceedings, could the circuit court under the law have awarded a peremptory mandamus for any other purpose than to compel the justices of the Nelson county court to appoint commissioners, the judgment of that court ought not to have been influenced or controlled, in any degree, by the subsequent *ex parte* action and proceeding of the commissioners of Washington county, or of the county court of that county. After they had, at the March term, 1852, upon their motion, procured to be instituted a proceeding by mandamus to compel Nelson county to do "*what she ought to have done, and what she had failed to do,*" to-wit: to appoint three commissioners, the justices of Washington county, and their commissioners, should have paused and taken no other steps until after the hearing and final judgment upon the case, arising upon the rule awarded, and the response offered thereto by the justices of Nelson county. But were there no other reasons existing why Nelson county should not be bound by the contract with Applegate & Carothers, a sufficient one might, under the circumstances, be found in the character of the contract itself by which no period is fixed for the completion of the

bridge, nor the precise plan of the work stated and defined as fully as it should have been; no security was required or given for a faithful performance of the work, and final completion of the bridge within any given period of time, yet it provides that the contractors should be paid $5,600 in less than three years, the payment thereof not being conditioned or made dependent upon the completion of the work, or upon any state of progress to be attained in the construction of the bridge.

NELSON COUNTY COURT vs. WASHINGTON COUNTY COURT.

The judgment of the court does not appear to have been supported by any proof whatever in regard to the sum of $2,500, arbitrarily adopted as the amount which the Nelson county court are commanded to levy upon the tithables of the county. If the proceedings had all been regular, and if upon a rule awarded, the circuit judge, under the circumstances existing, should have required either Nelson or Washington county to contribute towards building the bridge over Chaplin river, the amount of such contribution should have been ascertained and determined, in the manner prescribed in so much of the 7th section of the law of 1797 as is copied above into this opinion. There certainly should be some reasonable rule adopted for apportioning the expense of building a bridge or causeway over their borders, between two adjoining counties, and as the rule given in the 7th section of said act of 1797, as extracted and inserted herein, appears to be equal and just, the court should be governed by it; but neither this or any other particular rule seems to have governed the court, otherwise the evidence in the record would have furnished probably some clue to it.

5. The criterion pointed out by the 7th section of the act of 1797, for defraying the costs of bridges over streams dividing two counties, should be pursued.

Wherefore, the judgment of the circuit court is reversed, and cause remanded to that court for such further proceedings as shall not be inconsistent with this opinion.

C. A. WICKLIFFE for appellants; THURMAN for appellees.